

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

UNITED STATES OF AMERICA

versus

JOHN EMERSON TUMA &
CODY MONTGOMERY TUMA

CRIMINAL NO. 11-0031-01
JUDGE TOM STAGG

---

### MEMORANDUM RULING

Before the court is a "Motion To Reconsider Denial Of John Tuma's Rule 33 Motion For New Trial" (Record Document 133). For the reasons set forth below, the defendant's motion is **DENIED**.

### I. INTRODUCTION

In this court's Memorandum Ruling of June 1, 2012, responding to defense counsel's motion for new trial, the issues placed in contention were decided adversely to the defendant. See Record Document 130. Undaunted, counsel filed a motion to reconsider the adverse ruling. Three grounds for reconsideration are posited by counsel as having led to an improper verdict: evidence of Cody Tuma's child custody problems; an alleged lack of environmental harm; and an improper comment by government counsel during her closing argument. There are eleven attachments to

his motion, the first of which addresses the custody question and the remaining ten address the closing argument. Having read all 103 pages of attachments, there is no revelation of an error on any of the three issues.

## II. ANALYSIS

The ruling of June 1, 2012[1] should have been sufficient to, finally, lay this contentious matter to rest. From the penultimate paragraph of the ruling is the true source of defense counsel's losing cause:

> Credibility of witnesses was <u>quite critical</u>. It was apparent that the jurors believed the series of government witnesses and disbelieved those of the defendant, including John Tuma.

Record Document 130 at 8 (emphasis added).

During the pre-trial proceedings, it was conceded by both parties that credibility would be a central concern. In the preliminary instructions given to the jurors on the first morning of trial, the court gave a paraphrase of the pattern jury instructions on credibility of witnesses. At the close of the trial, the full pattern instruction on credibility was given.[2]

At the beginning of her closing argument, the government's counsel stated:

---

[1]For ease of reference, it is attached hereto and made a part thereof.

[2]The court used Fifth Circuit Pattern Jury Instruction 1.08. (Each juror had a copy of the court's instructions.)

2

> This case boils down to the credibility of the witnesses. It's not about fancy PowerPoints or slide shows. It is about whether, at the end of the day, either you believe the defendant or you believe Wayne Mallet, Todd Cage, and Cody Tuma.
>
> . . .
>
> So I will ask you again to please weigh the credibility of all the witnesses in this case carefully, because at the end of the day it is either the defendant who is telling the truth or it's Wayne Mallet, Todd Cage, Cody Tuma, Chris Warren, Mercy Rhone and the other various witnesses we've put on.

Record Document 145 at 2 and 4.

In his closing argument, defense counsel frequently peppered his remarks with references to the credibility issue. For example:

> I think whatever Cody, Cage and Mallet say, you better be very cautious about that.
>
> I am going to talk about them in a minute. But basically here's what they say; this is it in a nutshell: Hey, I'm a liar, yes, sir, and I am a pretty good liar. I can act, I can pretend like I'm scared, I can look an investigator right in the eye and tell them a lie. And I did that lots and lots of times. I'm a very good, effective, frequent liar, but trust me on this: The plant was a sham.
>
> I wondered if any of their noses were going to visibly grow while they were testifying, like Pinocchio; but unfortunately there is no way of telling by looking at somebody that they are a liar.
>
> . . .

3

> Mr. Mallet says: I lied to keep my job. I needed my job, so I lied. Well, what do we know from that?
>
> We know he is a liar and that if there is a good reason, he will lie.
>
> Now, let me ask you this? Which, in your opinion, is a better reason to lie? To keep your job? Or to stay out of prison?
>
> . . .
>
> If you believe Cody, Cage, and Mallet, John's guilty. But let me ask you this, as I close. Let's say that you have to go out of town for a month and you decide: I think we're going to let Cody, Cage, and Mallet take care of my house for a month. I'm going to give them the keys to the house, password to my computer, give them my credit card, tell them to act responsibly while I am not here. Would you do that? I don't think you would because you don't trust them. You can't trust them.
>
> And then let's just say you did it. Let's say they fooled you into saying: Trust us; trust me on this one. You come back after a month and there's five police cars out front and they're hauling out your computer and saying there is illegal stuff on it. And they're hauling out evidence of frauds on a credit card and they're hauling out marijuana and speed.

Id. at 29, 47, and 56. Defense counsel makes other similar comments throughout his closing argument. See id. at 31, 35, and 38.

Thus, even a casual review of the record will convince the reader that this case

revolved around the issue of credibility. Defense counsel inveighed against Cody, Cage and Mallet for eight trial days. The jury, however, chose to believe the government's witnesses - not those of the defense.

### A. The Child Custody Issue.

Attachment A is an affidavit of Kristin Cater, Cody Tuma's former wife, which contains some quite bitter *ad hominem* attacks on her former husband. She seeks to show that Cody Tuma had a dispute with his father over several issues, including money to hire a defense lawyer. She criticized her lack of child support payments and made much of the alleged mistreatment of their son, Levin, by Cody's current wife. By allowing this kind of testimony, defense counsel was seeking a mini-trial on the child custody issue in an attempt to damage the character of Cody Tuma and his credibility. The content of the affidavit only served to affirm that the denial of such evidence before the jury was appropriate. To repeat, Cody Tuma's testimony was only a part of the stream of other government witnesses. The jury verdict did not rest solely on the testimony of Cody Tuma.

### B. The Environmental Harm Issue.

In his motion, arguing about the environmental harm issue, counsel for defendant again clearly stated the issue of credibility:

> Cody, Cage, and Mallet were the only witnesses for the

5

> Government to testify that millions of gallons of illegal discharges occurred daily. Consequently, the credibility of Cody, Cage, and Mallet was critical.

Record Document 133 at 3. Then he engages in a rather circular argument based on two hypothetical "ifs":

> <u>If</u> the discharges described by these witnesses would necessarily have resulted in obvious environmental harm to the Red River, and <u>if</u> no environmental harm was noticed by those in a position to notice, <u>then</u> lack of environmental harm would have shown these witnesses to be liars.

<u>Id.</u> at 4 (emphasis added).

In seeking testimony of Charles Tubbs ("Tubbs"), an Arkla employee, under the auspice of Federal Rules of Evidence 701 rather than Rule 702, counsel misstates a fact:

> Tubbs was an Arkla employee and would have noticed harm to the area of the Red River <u>next to the Arkla facility</u>.

<u>Id.</u> at 4. (emphasis added). The court (and the jury) learned that the Arkla facility was on the west side of Highway 1 and the Red River at that location was approximately a mile away on the east side of Highway 1. "[N]ext to the Arkla facility" is far from an accurate description.

It is also apparent that Federal Rule of Evidence 602 would require that a

witness have personal knowledge of the subject of his testimony. For instance, how often did he visit the river bank, if ever? Did he go daily, weekly, monthly? Counsel's attempts to "boost" a witness's testimony are not appreciated. The sole purpose of a mini-trial on environmental harm would have been to dislodge the jurors attention from the charges they were hearing.

### C.  The Closing Argument Issue.

Defense counsel's final argument is centered on his contention that the government's counsel in her closing argument referred to facts outside the record and prejudiced the jury. No contemporaneous objection was made and such a passing remark, if indeed error, was harmless. See Record Document 145 at 62-63.

To buttress his motion, counsel added eleven attachments, ten of which, he asserts, are in support of this closing argument dispute. Attachments B through K, containing a total of 99 pages, offer scant support. In fact, the court learned, from Attachments C, E, and F, the basic cause of the plant's demise.

As mentioned, the court has read and considered all of the defense's arguments and attached exhibits. The government's comments did nothing more than inform the jury of a reasonable inference based upon the evidence presented at trial. Furthermore, the comments were not sufficiently prejudicial to cast serious doubt on the correctness of the jury's verdict.

## III. CONCLUSION

The defendant, John Tuma, has a sentencing hearing on August 28, 2012. Counsel is abjured to concentrate on that event rather than to continue his Sisyphean efforts to change the result of the jury's verdict.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 24th day of July, 2012.

_____
JUDGE TOM STAGG