U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

DEC - 5 2012

TONY R. MOORE, CLERK
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

UNITED STATES OF AMERICA

CRIMINAL NO. 11-0031-01

versus                                    JUDGE TOM STAGG

JOHN EMERSON TUMA

## WRITTEN REASONS FOR JUDGMENT

On March 21, 2012, the defendant, John Emerson Tuma ("Mr. Tuma"), was convicted by a jury on five counts: Discharge To The Publicly Owned Treatment Works In Violation Of A Requirement Of The Approved Pretreatment Program in violation of 33 U.S.C. § 1319(c)(2)(A); two counts of Discharge to the Red River Without A Permit in violation of 33 U.S.C. § 1311(a); Conspiracy in violation of 18 U.S.C. § 371; and Obstruction in violation of 18 U.S.C. § 1505.

The sentencing hearing in this matter was rescheduled several times. Now, on December 5, 2012, 259 days since the jury verdict, the process will be completed. Prior to today's hearing, the parties submitted copious briefs on the six (6) sentencing enhancements sought by the government and objected to by the defendant.

In arriving at the decisions on the defendant's objections to the PSR, I have

carefully considered the contents of the PSR and the addendums thereto and the oral and written arguments of counsel. The reasons stated herein are designed merely to supplement the record, not to serve as the cumulative explanation of authorities which support the judgment in this matter.

## I. Analysis Of Enhancements And Defendant's Objections

### a. Ongoing, Continuous, Or Repetitive Discharge

The PSR applies U.S.S.G. § 2Q1.3(b)(1)(A), which provides for a six-level increase where the offense resulted in "an ongoing, continuous, or repetitive discharge, release, or emission of a pollutant into the environment." Application Note 4 provides that: "Subsection (b)(1) assumes a discharge or emission into the environment resulting in actual environmental contamination. A wide range of conduct, involving the handling of different quantities of materials with widely differing propensities, potentially is covered. Depending upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation, a departure of up to two levels in either direction from that prescribed in these specific offense characteristics may be appropriate."

Mr. Tuma argues that the enhancement should not apply because the government did not introduce evidence of environmental harm, and, in the alternative,

that a two-level downward departure is warranted for the same reason. The Fifth Circuit cases interpreting § 2Q1.3(b)(1)(A) make clear that the government need not prove environmental harm. In <u>United States v. Goldfaden</u>, 959 F.2d 1324, 1331 (5th Cir. 1992), the Fifth Circuit explicitly held that the Application Note does not require proof of contamination; instead, "(b)(1) takes environmental contamination as a given, but allows for upward or downward departures depending on the potency, size, or duration of the contamination." Therefore, absence of proof of environmental contamination is irrelevant to the applicability of the enhancement.

The evidence adduced at trial showed that, at Mr. Tuma's direction, on innumerable occasions, there were illegal discharges of untreated wastewater, a pollutant, from about March 2006 through September 2007, which clearly qualifies as "ongoing" and "continuous." <u>See</u> Record Document 123, Todd Cage Trial Testimony at 21-25. Thus, the enhancement applies in this case because of the continuous discharges of untreated waster.

Additionally, Mr. Tuma is not entitled to a two-level departure. As noted in <u>Goldfaden,</u> the court should consider the potency, size, or duration of the contamination in deciding whether to depart. <u>See</u> 959 F.2d at 1331. While Mr. Tuma is correct that the government did not prove the <u>potency</u> of the contamination, the government did prove the <u>duration</u> of the contamination at trial. For several months,

3

as directed by Mr. Tuma, illegal discharges into the Red River and the Shreveport Publicly Owned Treatment Works ("POTW") occurred. See Record Document 123, Todd Cage Trial Testimony at 21-25. Mr. Tuma does not contest the duration of the contamination. Accordingly, the two-level downward departure is unwarranted because of the lengthy duration of contamination.

Therefore, the six-level enhancement in U.S.S.G. § 2Q1.3(b)(1)(A) applies.

### b. Substantial Expenditure For Cleanup

Paragraph 40 of the PSR adds a four-level increase pursuant to U.S.S.G. § 2Q1.3(b)(3), which provides in relevant part that ". . . if cleanup required a substantial expenditure, increase by 4 levels." Application Note 6 says that "Subsection (b)(3) provides an enhancement where a public disruption, evacuation or cleanup at substantial expense has been required. Depending upon the nature of the contamination involved, a departure of up to two levels in either direction could be warranted."

Section 2Q1.3(b)(3) does not apply here. There was no public disruption, no evacuation, and in my opinion, no "cleanup" as envisioned by the Guidelines. The government argues that CCS expended substantial funds to dispose of the leftover wastewater in the storage tanks at the facility. However, when section 2Q1.3(b)(3) is read in full, it is clear that the "cleanup" refers to remediation of some

environmental contamination (e.g. an oil spill). While CCS claims to have expended large amounts of money to dispose of untreated wastewater in on-site tanks (allegedly as much as $12,300,000.00), the government did not produce evidence at trial that the Red River or Shreveport POTW was actually contaminated by Mr. Tuma's actions. Hauling away wastewater contained in stainless steel tanks is not "cleaning up" as contemplated by Section 2Q1.3(b)(3). Since the government did not prove any environmental harm requiring a "cleanup," the enhancement does not apply. Moreover, this court declined to apply the same enhancement in sentencing Mr. Tuma's co-defendant, Cody Tuma. The court is guided by the need to treat similarly situated defendants equally. Therefore, the four-level enhancement in section 2Q1.3(b)(3) does not apply.

### c. Discharge In Violation Of Or Without A Permit

Paragraph 41 of the PSR applies U.S.S.G. § 2Q1.3(b)(4) which provides for a four-level increase "if the offense involved a discharge without a permit or in violation of a permit." Application Note 7 says that "Subsection (b)(4) applies where the offense involved violation of a permit, or where there was a failure to obtain a permit when one was required. Depending on the nature and quantity of the substance involved and the risk associated with the offense, a departure of up to two levels in either direction may be warranted." The government asks for a two-level

upward departure because Mr. Tuma discharged in violation of a permit <u>and</u> without a permit when one was required. Mr. Tuma asks for a two-level downward departure because the government did not prove the toxic nature of the substance he discharged.

It is clear that the enhancement applies because Mr. Tuma violated the terms of his permit to discharge into the Shreveport POTW when he discharged untreated wastewater, and Mr. Tuma himself admitted that he did not have a permit to discharge into the Red River in August of 2006. <u>See</u> Record Document 123, Jeri Dixon Trial Testimony at 8 (testifying that only clean water was supposed to be discharged to the city under terms of permit); Record Document 134, John Tuma Trial Testimony at 271-272. However, a two-level upward departure is not warranted simply because Mr. Tuma caused <u>both</u> the discharge to the Red River when he did not have a permit to do so and violated his permit to discharge into the Shreveport POTW. The Guidelines do not provide such a justification for departing upwards, and the government has not produced any cases in which a court has departed upward when a defendant <u>both</u> violates a permit and discharges without one. Therefore, a two-level upward departure is not justified.

Likewise, Mr. Tuma is not entitled to a two-level downward departure. Although the government did not prove the toxic "nature" of the substance, the Application Note also requires sentencing courts to consider the quantity of the

upward departure because Mr. Tuma discharged in violation of a permit <u>and</u> without a permit when one was required. Mr. Tuma asks for a two-level downward departure because the government did not prove the toxic nature of the substance he discharged.

It is clear that the enhancement applies because Mr. Tuma violated the terms of his permit to discharge into the Shreveport POTW when he discharged untreated wastewater, and Mr. Tuma himself admitted that he did not have a permit to discharge into the Red River in August of 2006. <u>See</u> Record Document 123, Jeri Dixon Trial Testimony at 8 (testifying that only clean water was supposed to be discharged to the city under terms of permit); Record Document 134, John Tuma Trial Testimony at 271-272. However, a two-level upward departure is not warranted simply because Mr. Tuma caused <u>both</u> the discharge to the Red River when he did not have a permit to do so <u>and</u> <u>also</u> violated his permit to discharge into the Shreveport POTW. The Guidelines do not provide such a justification for departing upwards, and the government has not produced any cases in which a court has departed upward when a defendant <u>both</u> violates a permit and discharges without one. Therefore, a two-level upward departure is not justified.

Likewise, Mr. Tuma is not entitled to a two-level downward departure. Although the government did not prove the toxic "nature" of the substance, the Application Note also requires sentencing courts to consider the quantity of the

6

substance, which in this case was substantial. For instance, Todd Cage testified that Mr. Tuma directed his employees to discharge untreated wastewater on "pretty much a nightly basis" throughout 2006 and 2007, which amounted to almost one million gallons per night. See Record Document 123, Todd Cage Trial Testimony at 21-25. Given the quantity of the wastewater discharged, a two-level downward departure is not warranted.

Therefore, the four-level enhancement in U.S.S.G. § 2Q1.3(b)(4) applies.

### d. Role In The Offense

The PSR applies U.S.S.G. § 3B.1.1(a), which provides for a four-level increase "if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. . ." Application Note 1 defines "participant" as a "person who is criminally responsible for the commission of the offense, but need not have been convicted," while Note 3 instructs the court to consider "all persons involved during the course of the entire offense" including "the unknowing services" of "outsiders" when determining if the activity is "otherwise extensive." Mr. Tuma argues that the enhancement does not apply because there were less than five participants in his scheme, and alternatively that the criminal activity was not otherwise extensive.

The court finds that the enhancement applies because Mr. Tuma led a criminal

activity that was "otherwise extensive." In <u>United States v. Ho</u>, 311 F.3d 589, 611 (5th Cir. 2002), the Fifth Circuit interpreted § 3B.1.1(a) and Application Note 3 in holding that "[i]n deciding whether a scheme was otherwise extensive, the district court must take into account all persons involved during the course of the entire offense" including those outsiders who unknowingly served the criminal activity. In <u>United States v. Davis</u>, 226 F.2d 346, 360 (5th Cir. 2000), the Fifth Circuit upheld application of the enhancement where employees, loan brokers and lawyers unknowingly served a fraud and money laundering scheme. Similarly, the evidence adduced at trial in this case clearly supports a finding that Mr. Tuma's criminal activity was extensive, as it involved the unknowing service of numerous ArkLa employees, delivery truck drivers and contractors who modified the ArkLa facility to allow the concealment of illegal discharges. Therefore, the four-level enhancement in U.S.S.G. § 3B.1.1(a) is warranted.

e. **Abuse of Position of Trust**

In paragraph 44, the PSR applies U.S.S.G. § 3B1.3 which provides for a two-level increase "if the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. . .". That section also provides that if the adjustment is based solely on use of a special skill, it may not be employed in

addition to an adjustment under § 3B1.3. U.S.S.G. § 3B1.3. Mr. Tuma argues that he did not occupy a position of trust, and that, even if he did, the position did not significantly facilitate commission or concealment of the crime.

Whether abusing a position of trust significantly facilitated commission or concealment of the offense depends on "whether the defendant occupied a superior position, relative to all people in a position to commit the offense, as a result of [his] job." United States v. Pruett, 681 F.3d 232, 248 (5th Cir. 2012)(citation omitted). Section 3B1.3 is satisfied "where the defendant's position made the criminal conduct easier to perform." Id. The facts of Pruett are strikingly similar to those of this case. There, the defendant was president and CEO of two companies which operated twenty-eight wastewater facilities in northern Louisiana. Id. at 237. This position afforded him a great amount of discretion and control over aspects of the business, including compliance with permit regulations. Id. at 249. Judge James applied the enhancement in 3B1.3 when he sentenced the defendant and the Fifth Circuit affirmed, noting that the defendant "was responsible for overseeing the facilities' treatment and testing systems, as well as maintaining accurate records." Id. at 249. Although the LDEQ and EPA conducted tests, they relied on the defendant to monitor and self-report his own violations. Id. Thus, his position "facilitated his offenses." Id.

Similarly, the enhancement applies here because Mr. Tuma abused his position as owner (while at ArkLa) and plant manager (after the sale to CCS) in a manner that significantly facilitated the commission or concealment of his offense. Mr. Tuma was responsible for overseeing the facilities's treatment and testing systems and maintain records. The City of Shreveport relied on Mr. Tuma to self-report violations, but he abused his position of trust in order to facilitate and conceal his crime.

The defense argues that the government cannot now claim that the public is a "victim" because the PSR only included CCS as a victim and the government did not object. This argument has no merit. The enhancement does not depend on the public's status as a "victim." In United States v. Kay, 513 F.3d 432, 460 (5th Cir. 2007), the Fifth Circuit explained that: "We have never held . . . nor do the guidelines explicitly require, that the determination whether a defendant occupied a position of trust must be assessed from the perspective of the victim." In Kay and other cases, the Fifth Circuit has "upheld the defendant's sentence enhancement because [they] violated [their] position[s] of trust with respect to the government" even though the victims were non-government entities. Id. Even though the public is technically a victim of Clean Water Act violations, United States v. Snook, 366 F.3d 445 (7th Cir. 2004), their status as such is irrelevant to an analysis under the of abuse of trust enhancement. The only relevant inquiries are whether Mr. Tuma abused a position

10

of trust and whether that abuse facilitated commission or concealment of his offense. See Kay, 513 F.3d at 460. Accordingly, it is irrelevant that the PSR did not explicitly label the public as a victim.

Mr. Tuma was the owner and manager of ArkLa and the plant manager at CCS for a substantial portion of the period of time during which he committed the offense. He abused his leadership position in order to facilitate his crime. Therefore, the two-level enhancement in U.S.S.G. § 3B1.3 applies.

### f. Obstruction of Justice

Paragraph 45 of the PSR applies a two-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The government argues that the enhancement applies because Mr. Tuma committed perjury while testifying at trial. In United States v. Dunnigan, 507 U.S. 87 (1993), the Supreme Court held that district courts must make factual findings regarding each element of perjury before applying the enhancement. A witness commits perjury if he gives false testimony concerning a material matter with the intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory. See 18 U.S.C. § 1621.

The court finds that the defendant was untruthful at trial with respect to material matters in this case. Specifically, Mr. Tuma lied on multiple occasions under oath about intentionally discharging untreated wastewater to the City of Shreveport

and the Red River. With respect to discharging untreated water, Mr. Tuma said he "absolutely [did] not" intentionally discharged untreated wastewater to the city and "never" discharged untreated water to the river. See Record Document 134, John Tuma Trial Testimony at 39. Mr. Tuma further denied having "any knowledge or belief that Mr. Cage, Mr. Mallet, or Cody was illegally dumping water into the city sewer or the Red River." Id. at 61-62.

At trial, there were numerous witnesses who contradicted Mr. Tuma on the basic fact of his intentional discharge of untreated water. For example, Wayne Mallet testified that Mr. Tuma directed the employees at the facility to "put [the untreated wastewater] in the tanks available and then we would constantly discharge untreated water." Record Document 123, Wayne Mallet Trial Testimony at 13-15.

Todd Cage corroborated Mr. Mallet's testimony. Todd Cage testified that he was discharging untreated wastewater to the city and into the Red River on "pretty much a nightly basis" throughout 2006 and 2007. Record Document 123, Todd Cage Trial Testimony at 21-23. He further testified that he was discharging the untreated water at the explicit direction of Mr. Tuma. See id.

Whether Mr. Tuma knowingly discharged untreated wastewater is a basic fact on which Mr. Tuma could not have been mistaken or confused.

Therefore, by virtue of his failure to give truthful testimony on material matters

that were designed to substantially affect the outcome of the case, the court concludes that Mr. Tuma's false testimony at trial warrants an upward adjustment by two levels pursuant to section 3C1.1 of the Guidelines.