RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 12/5/12
BY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

UNITED STATES OF AMERICA

versus

CRIMINAL NO. 11-0031-01
JUDGE TOM STAGG

JOHN EMERSON TUMA

## WRITTEN REASONS FOR JUDGMENT DENYING RESTITUTION

Having thoroughly reviewed the evidence, the relevant statutes and case law, CCS Midstream Services, LLC's ("CCS") request for restitution is **DENIED**. The complications associated with causation and damages outweigh the need for restitution in this case.

Although the Crime Victims Rights Act ("CVRA") and the Victim Witness Protection Act ("VWPA") provide statutory bases for restitution, a court may decline to make such an order "[t]o the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims. . ." 18 U.S.C. § 3663(B)(ii).[1] When the "amount of the loss attributable" to

---

[1] Section 5E1.1(b)(2) of the United States Sentencing Guidelines similarly provides that restitution need not be imposed if "determining complex issues of

the defendant's conduct cannot be reasonably determined, the district court may properly deny a request for restitution. See United States v. McMillan, 600 F.3d 434, 459-60 (5th Cir. 2010). The Third Circuit in United States v. Kones, 77 F.3d 66, 69 (3d Cir. 1996), expounded upon the legislative history of the VWPA in defining those cases which are inappropriate for restitution due to factual complications:

> Nothing in the legislative history evidences an expectation that a sentencing judge would adjudicate, in the course of the court's sentencing proceeding, all civil claims against a criminal defendant arising from conduct related to the offense. Rather, it was expected that entitlement to restitution could be readily determined by the sentencing judge based upon the evidence he had heard during the trial of the criminal case or learned in the course of determining whether to accept a plea and what an appropriate sentence would be. While the original statute, similar to the current version, provided for discretion to decline to grant restitution when it would be an undue burden to do so, this was not because Congress expected that sentencing judges would be required to hold an evidentiary hearing on liability issues in the course of the sentencing proceedings. As the Senate Report explains, "the Committee added this provision to prevent sentencing hearings from becoming prolonged and complicated trials *on the question of damages owed the victim.*" S.Rep. No. 532, 97th Cong., 2d Sess. 31 (1982), reprinted in 1982 U.S.C.A.N. 2515, 2537. The kind of case that Congress had in mind was one in which liability is clear from the information provided by the government and the defendant and all the sentencing court has to do is calculate damages. See id. at 2536-37 (discussing a case where the victim of a purse snatching suffered a broken hip).
>
> This aspect of Congress' expectation is important because it counsels

---

fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."

against construing the text of the statute in a way that would bring fault and causation issues before the sentencing court that cannot be resolved with the information otherwise generated in the course of the criminal proceedings on the indictment. We are persuaded that this counsel should guide our interpretation of the restitution provisions of the VWPA.

(Emphasis in original).

In order to establish that it is a "crime victim" entitled to restitution, CCS would have to show that it was "directly and proximately harmed as a result of the commission of a Federal offense," meaning that Mr. Tuma's offense is a "but-for cause of the harm." See 18 U.S.C. § 3771(e); In re Fisher, 649 F.3d 401, 402 (5th Cir. 2011). Judge Higginbotham explained what constitutes "but-for" causation in In re Fisher:

> An act is a but-for cause ~~of cause~~ of an event if the act is a sine qua non of the event—if, in other words, the absence of the act would result in the non-occurrence of the event. Conversely, an act is not a but-for cause of an event if the event would have occurred even in the absence of the act.

649 F.3d at 403 (quoting W. PROSSER, THE LAW OF TORTS § 21 at 238 (4th ed. 1971)).[2]

This court cannot resolve CCS's request for restitution on the basis of the

---

[2] The court seriously doubt's CCS's claim satisfies the "but-for" analysis as explained by Judge Higginbotham, given that CCS's need to dispose of a large quantity of untreated wastewater would have occurred even if Tuma had not illegally discharged some of that water.

3

evidence submitted during the criminal trial of <u>United States v. Tuma</u>, No. 11-0031-01. Many witnesses would be required to testify to numerous unresolved causation issues in order to show that CCS was "directly and proximately harmed" by Mr. Tuma's scheme. For instance, CCS would have to show that it was absolutely required to dispose of the wastewater offsite as opposed to disposing it by any other means. There is conflicting evidence as to whether CCS could have waited and obtained permission from the government to eliminate the waste via traditional means–<u>i.e.</u> treatment and discharge as it had done in the past. Establishing this fact would not only entail testimony of CCS officials, but also the relevant governmental authorities, namely the Environmental Protection Agency and the City of Shreveport.

There are also complicated damages issues. "A restitution order 'must be limited to losses caused by the specific conduct underlying the offense of conviction.'" <u>McMillan</u>, 600 F.3d at 459-60 (citation omitted). Therefore, CCS would have to account for each dollar of the $12,300,000.00 figure it has presented as damages. First, there is evidence from the testimony Jim Davis and others that CCS continued to accept large quantities of wastewater even after CCS terminated Mr. Tuma. Thus, CCS would need to show that its disposal expenditures for over 4,000,000 gallons do not account for wastewater received after Mr. Tuma was terminated. Second, independent of *when* Mr. Tuma was employed at CCS, there is

the issue of who was paid for receiving the wastewater. It is obvious that after the purchase by CCS in September of 2006, payment for incoming wastewater went to CCS. Since CCS profited from hundreds of truckloads of wastewater, then shouldn't its costs to dispose of that wastewater be offset by these profits? It would require a mini-trial to determine how much CCS had been paid to receive into the plant the water it disposed of. Third, CCS would have to show that its machinery in place at the time of the offense could adequately process the stored waste to meet the chloride limits that were imposed at the time. According to Jim Davis, the plant was shut down for a period of time, so if CCS could not process the waste with the existing machinery, how much would it cost to install special, additional equipment to reduce chlorides? Surely this could have been done for significantly less than $12,300,000.00. This is yet another issue that would require a mini-trial. Fourth, CCS would have to show that none of the costs were related to business decisions such as additions and alterations to the plant, and that each cost was directly attributable to Mr. Tuma's conduct.[3]

Equal treatment of similarly situated defendants is an additional factor supporting denial of restitution in this case. In the sentencing phase of Mr. Tuma's

---

[3] For example, there is some evidence that, subsequent to Tuma's termination, the facility was converted into a saltwater disposal facility.

co-defendant, Cody Tuma, this court concluded that a hearing on restitution would be unduly burdensome, stating that:

> Sentencing of Cody Tuma is not the process whereby the Court determines whether any restitution is owed. This will require a mini-trial and would be a burden on the sentencing process, an inappropriate burden on the sentencing process...

The circumstances presented at the sentencing of Cody Tuma are equally true today in this proceeding; there are complicated issues of causation and CCS's damages which would unduly burden the sentencing process. Therefore, for the foregoing reasons, CCS's request for restitution is **DENIED**.